Good afternoon. May it please the court. Becky James for the defendant and appellant Gordon Driver. I'd like to reserve approximately two minutes for rebuttal. This case involves overreach into conduct that constitutes extraterritorial application of the wire fraud statute without a clear affirmative indication that Congress intended such a reach. And this error affects both Mr. Driver's conviction as to count nine and his sentence as a result of the foreign conduct. As to the sentencing, the vast majority of the conduct that became relevant conduct in this case occurred in Canada. Mr. Driver was a Canadian citizen, a resident of Canada. He conducted his business through which the fraud, on which the fraud allegations here are based, in Canada. And a full 75 out of the 87 identified alleged victims in the case were Canadian. So there's a tremendous majority of the conduct here that occurred in Canada. Unfortunately he used American wires. American what? Wires, wires. Well. Tough word for me to pronounce but you know what I mean. It's wire, we're talking wire fraud. Wire fraud and he used US wires to conduct this fraud. So I where the fraud lands if you're using instrumentalities of interstate commerce, namely wires. Well that might be enough to establish US jurisdiction but the question is the extraterritorial application of the statute. And the Supreme Court. What's extraterritorial about it? He used US wires. Well the only use in the case of the Canadian. I'm sorry he did from Canada? From Canada the only arguable use and I don't think it's even necessarily proven in every case but the only arguable use there would be Canadian investors if they if they use the wires. This is all in the sentencing context so we don't have very much information. The only arguable use there would be possibly wiring funds over to US accounts. But if you look at both the Supreme Court. I'm sorry are you disputing that there were US wires used? Well we don't have I don't think we have specific information as to all of the transactions. Did you hear my question? Are you disputing? Are you disputing? The record does not support a verdict based on the use of US wires? Well not as to the conviction your honor. Okay so let's talk about I mean we'll get let's just talk about the conviction. So once you've conceded that you've conceded use of US wires. I don't understand why it matters where the wires lead. Explain. Right if you look at the Supreme Court's authority in this area that the most recently RJ Arnabisco the court looks at the focus of the statute at issue to determine whether the conduct at issue is domestic or extraterritorial. And in this case the issue is whether the focus of the of the wire fraud statute is the use of the wire in this case as it can count nine it would be CK's wire from California to New York or is it the fraud? And I would say your honor that the focus of the wire fraud statute is the fraud. That is a deceptive conduct. Well it's called wire fraud. Why does it have to have one focus? Why can't it be wire and fraud? And you know it's fraud by our wires to commit fraud. Why isn't that all there is? And that's not extraterritorial. That happens here. The fact that the victims happen to be somewhere else is neither here nor there. We we don't want to have our I mean Congress can prohibit the use of our wires to defraud people. Our wires domestically defraud people anywhere in the world. There's no problem with that is it? Well let me just be. There's nothing extraterritorial about that is it? Let's well first of all let me just be clear because I may have muddled the issues a little bit about sentencing. Maybe I have. Maybe I have. The relevant conduct for sentencing purposes versus the conduct at issue in count nine. So count nine actually does involve a investor in in California who did use the wires. But the factual basis does not establish where that is what where the allegedly deceptive conduct occurred. So in that case the issue becomes what do we focus on it as a focus of the of the statute. And I think Pascantino and then Morrison are very instructive on this issue because Pascantino focus on in determining what the focus of the statute in that case the the crime the fraud the deceptive conduct had occurred in the US with the consequence being in Canada. That is the effect the transportation the exploitation without paying taxes to Canada. So the court there held you look at where the deceptive conduct occurs. This is under the wire fraud statute not not what happens abroad. And I we have here the flip side. The flip side is here there was deceptive conduct not proven to have occurred in the United States. Presumably occurred in Canada. And an investor with a so-called investor. I mean somebody victim a victim in California. Right. Right. And so the only in the in the guilty plea context. So I understand your argument then. So if you're standing in Vancouver and you shoot across the border and hit somebody in Seattle not a crime. Can Congress can't make that a crime? I mean assuming you could shoot straight enough and. Well I mean Congress can make anything a crime as long as they clearly do so. And. Okay. No I'm sorry. Fair enough. So you think they could have made this a crime but somehow they were not clear enough about it. Well to the extent that the that the that. You do concede that if you're standing across the border you shoot somebody in the United States that could be a. I mean that's something that Congress could make a federal crime. And I think they. I think they have. But it's hard to guess about these things. Right. I actually think there I might be guessing here but I do think there is our statutes that apply to precisely that situation. So if you're if you're if you're if you're in Canada and you target a U.S. victim and use. Why what's extraterritorial about that? I mean what's why why is that sort of within the heartland of the wire fraud statute? Well the heartland really of the wire fraud statute is the fraudulent scheme. And in this case the the scheme as it were is really just making false representations as to the performance history of the trades. So while you have and actually as to conviction as to count nine while you do have at least that domestic connection that there was at least a domestic victim. The question is a little bit harder with respect to the relevant conduct which I could just touch on briefly. The relevant conduct largely involves no no domestic victims whatsoever. They are Canadian alleged victims. You've now slid into sentencing right? Yes. Just because I'm running a little short on time. So we'd like to touch that if you don't mind. I just want to keep your argument straight. Yes exactly. I appreciate that. As to this as to the vast majority of the relevant conduct used to generate the very high sentence in this case that conduct was not you your example of shooting across the border. This was the the victims alleged victims here the investors were using a scattergun and then one of the bullets goes across the border. Most of the victims are on the other side of the border. Well then for sentencing purposes you can only count the one that the one that was shot in the United States because under Shelfman Shue this court held that you cannot count foreign crimes in relevant conduct. And here we have really some very discreet conduct occurring in Canada originated in Canada. The business was conducted out of Canada. Most of the investors and the overwhelming majority of investors are in Canada and only this one strand ends up here through not Mr. Driver but through Mr. Trainer and his conduct really is the one who drew in California. So even if you could draw in the California investors that doesn't allow for bringing in all of these Canadian investors who were only involved in with Mr. Driver in Canada. But if Mr. Driver agreed to the number of victims here and agreed to the amount of loss here that then we're looking at a plain error standard for review are we not. And given the Morrison even if Mr. Driver's interpretation Morrison is correct looking at U.S. versus garlic. I just wonder how it is that we can indicate that this would be plain error for the trial court to not have recognized this and brought this matter up himself either with respect to the substantive offense or the sentence. Well I mean I think that if you look at the is not to be counted in relevant conduct. And so I think that our error is clear and obvious. Admittedly it was not pointed out by counsel which is why we're in plain error. And perhaps for that reason the court cannot be necessarily faulted. But it was a you know it was something that was not addressed by counsel. And but it is a law of this circuit. And so we look at the law as it exists. And you know even without fault we look at this court's law and this court's law makes it clear. And it certainly had a substantial had an effect on Mr. Driver's substantial rights because this is what made his sentence more than double. I believe if you took out the Canadian investors and Canadian losses it would cut his sentence I think at least in half. You are over time. May we give you a little time for rebuttal. Yes thank you Your Honor. Okay we'll hear from the government. May it please the court Monica Tate for the United States. I wanted to point out a couple of areas in the record in which the defendant admitted that his investment fraud scheme was a U.S. crime and are therefore inconsistent with the position he's taking now on appeal. First of all in his plea to count 16 which is lying to the Securities and Exchange Commission. The defendant admitted that the SEC had not jurisdiction to investigate access automations investment offering. That's the very same thing that's the subject of the wire fraud count. And Mr. Driver admitted that the SEC had jurisdiction to investigate that. That was an element of that crime. Secondly in the context of sentencing Mr. Driver also admitted that the commodity pool operator fraud. He pleaded or he pled guilty to count 16? Yes he did Your Honor. And is pleading guilty an admission of all the underlying facts? I don't know. Pleading guilty is an admission of the underlying facts. The facts certainly the ones that are stated in the factual basis and this one the fact that the SEC had jurisdiction to investigate an access automations investment offering is stated in the factual basis in writing and also at the plea colloquy. That's what the district court heard. At the plea colloquy. And Mr. Driver admitted to that. In addition I know that this court's case authority indicates that a plea of guilty necessarily goes to the allegations in the indictment. The counts to which you plead as well. But these facts were actually stated in the in the plea colloquy. Turning to the other set of. And he owned up to it. He did. He said yes he did. In the commodity pool operator enhancement that requires that the defense. It's a little strange because it's somewhat of a legal conclusion whether the SEC has jurisdiction to investigate. But it's an element. You can plead to the underlying facts but I'm not sure. It is an element of the offense that the government has to prove in a trial of a 1001 violation. It has to be a matter within the agency's jurisdiction. I believe it's one of this court's elements for 1001. If I can mention the commodity pool operator the sentencing enhancement for which the defendant agreed expressly and is not contested on this appeal. That requires that the offense of conviction involved a violation of United States commodities law. And in the district court. And it's not challenged on appeal. The defendant admitted that that sentencing enhancement applies. And so that thereby he admitted that his offense involved a violation of United States commodities law. And he was a U.S. commodity pool operator. Those two aspects were admitted. And so in light of all that I really don't see that there is any issue that his U.S. that his crime of wire fraud was a U.S. crime. Moreover the questions asked of counsel indicate as those questions indicate in the responses it's clear that wires were used to execute this scheme. And it is not the victim who made these wires happen. It is Mr. Driver who made these wires happen because he induced that victim count nine victim to send him money. There was an allegation in the reply that there's no proof that this victim relied on Mr. Driver. Although I don't think we need to prove that because it's supported by the factual basis. The government sealed excerpts of record at page 399 is the letter from this victim who describes his investment. At first he invested $50,000 and he invested that money because he had heard about the prior success which was false that Mr. Driver had been having. He then he tells the court I was making so much money based on the new false statements that he got from the defendant that I invested another $100,000. That's count nine, the $100,000. So there is evidence in the record that this victim relied on the false statements that Mr. Driver sent to his point person, Mr. Traynor, and that Mr. Traynor distributed to the California investors. The charts that Mr. Traynor distributed, at least some of them, are in the record at page 565 to 567 and CK's name is on those charts. So they're a little hard to read but they are there in the record. I want to just address briefly the voluntariness because of course if the plea is voluntary then we believe that the appellate waiver kicks in and the appeal certainly as to the conviction should be dismissed. This was a very thorough plea colloquy before the district court and the district court specifically asked counsel and the defendant, did you consider any defenses that you could present? Did you tell your lawyer everything about your case? One thing we didn't point out is that Mr. Driver, six years earlier, gave testimony to the SEC in which it was clear, if you look at the testimony, which is the record at page 136 and 138, that he was thinking about these issues. Hey, I sometimes am in Canada. Most of my investors are Canadian. Maybe I shouldn't be here. And he raised those issues six years before his guilty plea to the SEC and to the CFTC on those two pages that I just mentioned. So I think that the defendant had in his mind a conscious thought that, gosh, some of my investors are Canadian. I don't think I should be here. But he gave that up and he decided to plead guilty anyway. And it was a well-counseled plea and he did that voluntarily. Real quick for you. So the analysis you would ask us to apply here is that if we agree with you that the factual basis was sufficient, despite the arguments of Ms. James, then we should then hold that the plea agreement waiver is solid and we should dismiss this appeal. Isn't that the process we should go through here? That is what we've argued. Yes, I do agree with that. That's as to the conviction. As to the sentencing, our main argument is that it's waived. And one of the reasons for that, well, the reasons for that is because they accepted all these facts and they told the district court, oh, there's 88 victims. Well, no, we object to one victim. We want to take him off the list because there's something wrong with that one victim. So after having had the full financial analysis given to them, a full list of 88 itemized victims, they only complained about one. And that clearly indicates that they thought about it and they dived into the list and they'd found this one that they didn't like and they wanted to take him out and the government actually agreed to take him out. But other than that, expressly said to the district court what the exact restitution number was, what the exact loss was, and indicated that it was uncontested. And these actions were not accidental. This was a plan. It was a tactic to accept the bad news about this crime, accept that it was serious and it caused lots of loss, and nevertheless present what looks like a good case of, you know, a supportive family. A supportive friends and a sort of a defensive. This is aberrational. Now, the government didn't buy it, and apparently neither did the district court. And I think the district court was correct not to buy it. The sentence that is within guidelines ever be substantially unreasonable. Your Honor, I'm not sure. I do apologize. I don't know if I can answer that question accurately for you today, but I think that in this case, clearly the district court had a big fraud in front of it, had 87 victims. People came to the district court and talked about the loss of their retirement savings, how they had made plans for their lives. They had sold their businesses because they thought they had made all this money, and instead they found out that they hadn't. One person, actually it was C.K., said that his marriage fell apart because of the depths of disappointment to which they had gone. He had sold his contractor business and turned down work. Another gentleman and his wife came in and said that this was all the money they had saved for retirement. So it's a very serious offense, and I think that the district court was well within its discretion to impose the sentence that it did. I'd like to just address one other point about the impact on the Canadians. Sorry, the Canadian impact on the U.S. This was no Canadian scheme. There was no Canadian corporation. It was a Nevada corporation that everybody sent their money to, including the Canadians. There were no Canadian bank accounts that he asked people to wire money to. There's at least one instance in the record where he's asking them to wire money to the United States. Also, several of our victims, this is glossed over by the defense, many of our U.S. victims were members of the Canadian groups. N.K. is in the record, and he was the member of the Rutledge group. And K.N., confusingly, was a member of the Stephen Taylor group, and he was an American, a member of a Canadian group. In the government sealed excerpts, there are letters from S.B. He is a Rutledge investor, a Canadian group, but U.S. investor. P.K., another one, in the Mainz group, which was a Canadian group, but P.K. was in the United States. And so, it's all mixed together. They sent their money to the United States. He commingled their money with the Americans' money. Any money that he paid out to anyone, American or Canadian, was fictitious profit because he didn't make enough money trading in the U.S. And so, in light of that, it's all commingled, and necessarily, they're all part of one domestic scheme. And unless the Court has any further questions, I will submit. Thank you. Thank you. We'll give you a minute for rebuttal. Thank you, Your Honor. Very briefly. It's one thing to say that the SEC has jurisdiction to investigate something. It's another to say that the person is necessarily guilty of whatever they're investigating. And here, to say that the SEC has jurisdiction to investigate whether a violation of U.S. security laws has occurred does not mean that Mr. Driver has admitted that there's no extraterritorial application in this case. As to the voluntariness of the plea, I don't have a chance to look briefly at the pages cited by the government, but I would note that in that testimony, Mr. Driver specifically says, I don't understand the law. He raises a question about, kind of confusion about, why am I being prosecuted here when I was operating in Canada? But he makes clear, I don't understand the law. He was acting on his own behalf at that point. I don't think that can render his plea, his subsequent, much subsequent guilty plea, voluntary because he actually understood what he was giving up. As to Judge Owen's question on the, should this appeal be dismissed, if the court were to find that, the answer is no, because there is no waiver of appeal as to the sentencing issue. So clearly that would have to remain, even if the court were to find the plea voluntary. But there could be two parts to this appeal, right? You could dismiss part and then do something one way or the other on the sentencing issue. Right. If the court, I mean, obviously we believe that the court. Not what you want to have happen, I understand. Not what we want, but in response, right. We just want to make clear that the court, the entire appeal would not fall with that because there was no waiver of appeal as to sentencing. And finally, as to the impact on the United States of the sentencing issues, I would just bring the court back to Shaofen Chu. In that case, there was clearly impact on the United States. There was, in that case, the defendants had engaged in fraud against the Bank of China, but they, as part of their scheme, fled to the United States, used and made immigration fraud, committed immigration fraud, and sought to conceal assets on themselves in the United States. So there was clearly a U.S. component. Nevertheless, the court said you can't consider the crimes against Bank of China in the relevant conduct. You can only look at that portion that did occur in the United States. And similarly here, to the extent there was fraud that was occurring in Canada, it's not properly considered part of relevant conduct. Rather, only the crimes that occurred in the United States can be considered. Thank you very much, Your Honor. Thank you. The case is filed. You will stand submitted.
judges: Kozinski, Owens, Settle